IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JIMMY CLEVELAND  BURGETT,  §
TDCJ #627794,                          §
                                               §
            Plaintiff,                    §
                                               §
v.                                            §            CIVIL ACTION NO. H-10-0162
                                               §
DR. EUGENE FONTENOT, *et al.*,   §
                                               §
            Defendants.               §

## MEMORANDUM AND ORDER

State inmate Jimmy Cleveland Burgett (TDCJ #627794) has filed a complaint under

42 U.S.C. § 1983, alleging violation of his civil rights.  The defendants have filed a joint

motion for summary judgment [Doc. # 29]. Burgett, who has made more than one request for

injunctive relief in this case, has filed a response, to which the defendants have made a reply

[Docs. # 32, # 34].  After reviewing all of the pleadings, and the applicable law, the Court

grants the defendants' motion for summary judgment and dismisses this case for reasons set

forth below.

## I.       BACKGROUND

Burgett is a 73-year old inmate who is presently incarcerated in the Texas Department

of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), at the Luther

Unit in Navasota, Texas.  The defendants in this case, Dr. Eugene Fontenot and Nurse

Practitioner Ndi Chukwumerije, are employed by the University of Texas Medical Branch

("UTMB") to provide medical care to prisoners in TDCJ.  Both defendants are assigned to

the Luther Unit, where Burgett is currently in custody.

Burgett has undergone extensive treatment for cancer while imprisoned. As part of his treatment regimen, oncologists and other consulting specialists have prescribed "morphine" to treat his complaints of pain. In his complaint, Burgett has alleged that the defendants denied him access to morphine as prescribed by the oncologist from August 3, 2009, through September 17, 2009, and again from December 13, 2009, through January 8, 2010. Burgett contends that, by denying him morphine as prescribed by specialists in the past, the defendants have violated his constitutional right to receive adequate pain medication. He seeks $45,000 in compensatory and $200,000 in punitive damages from the defendants.

After the complaint was filed, Burgett filed a motion for a preliminary injunction, arguing that the defendants ignored his requests on March 17, 2010, and March 22, 2010, to renew his prescription for morphine. [Doc. # 9]. On May 18, 2010, this Court denied Burgett's request for a preliminary injunction. [Doc. # 19].

The defendants have now filed a motion for summary judgment, arguing that Burgett failed to exhaust available administrative remedies with respect to some of his claims and that both defendants are entitled to qualified immunity because Burgett has not established a constitutional violation in connection with the medical care that he has received [Doc. # 29]. In support, the defendants have provided an affidavit from Dr. Steven Bowers, as well as selected medical and grievance records.

Burgett has filed objections in response to the defendants' summary judgment motion

[Doc. # 32].  In addition to this response, Burgett has filed a second request for injunctive relief [Docs. # 25–# 26, # 31, # 35].  The defendants have filed a reply, arguing that Burgett has not been denied medication with deliberate indifference to his medical condition [Doc. # 34].  The parties' contentions are addressed below under the governing standard of review.

## II.   <u>STANDARD OF REVIEW</u>

The defendants' motion is governed by Rule 56 of the Federal Rules of Civil Procedure, which mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In that respect, a reviewing court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its

burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co*., 478 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

The plaintiff proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v.*

*Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all

reasonable inferences which can be drawn from them.  *See Haines*, 404 U.S. at 521; *see also*

*United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*,

84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules

of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of

his burden in opposing a summary-judgment motion.  *See Martin v. Harrison County Jail*,

975 F.2d 192, 193 (5th Cir. 1992).

## III.   DISCUSSION

### A.      Exhaustion of Administrative Remedies

The defendants seek summary judgment on the grounds that Burgett failed to exhaust

available administrative remedies with respect to his claims against Nurse Practitioner

Chukwumerije.   The defendants argue, therefore, that Burgett's claims against Nurse

Practitioner Chukwumerije are barred from review because he failed to comply with the

exhaustion requirement found in the Prison Litigation Reform Act (the "PLRA"), which

governs this suit.

Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required

to exhaust administrative remedies for all "action[s] . . . brought with respect to prison

conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any

other Federal law."   The Supreme Court has held repeatedly that § 1997e(a) requires

exhaustion of *all* administrative procedures before an inmate can sue in federal court.  *See*

*Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).

TDCJ has a formal two-step administrative grievance process that is mandated by the Texas Legislature.  *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable); *see also Almond v. Tarver*, 468 F. Supp. 2d 886, 896 (E.D. Tex. 2006) (citing 37 TEX. ADMIN. CODE ANN. § 283.3 (West 2006)).  A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).  Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result.  *See id*.  Step 2 grievances are reviewed at the state level.  *See id*.; *Wendell*, 162 F.3d at 891.  A Texas prisoner must pursue a grievance by presenting his claims through both steps to satisfy the exhaustion requirement.  *See Johnson*, 385 F.3d at 515 (citing  *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

The defendants have provided a record of the grievances that Burgett filed regarding his requests for morphine during period relevant to the complaint, from January 2009 through March 11, 2010.  [Doc. # 29, Exhibit C]. The record shows that Burgett filed a step 1 grievance about his medical care on August 2, 2009, complaining that Dr. Fontenot refused

6

to renew his prescription for morphine.  Burgett filed a second step 1 grievance on August 7, 2009, asking the medical department to renew his prescription for morphine.  After a practice manager determined that Burgett had been given adequate access to medication, Burgett filed a step 2 grievance on October 13, 2009.  In that grievance, Burgett complained only about Dr. Fontenot's refusal to renew the morphine prescription in August of 2009.  There is no mention of Nurse Practitioner Chukwumerije or any claims against her in any of the grievances filed by Burgett.

The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which demands compliance with prison procedural rules.  As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524.  By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* (citing *Booth*, 532 U.S. at 737).  In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy.  *Id.* (citations omitted).

Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately

7

bypass the administrative process by flouting an institution's procedural rules.  *See Woodford*, 548 U.S. at 96-98.  Burgett's failure to file a grievance regarding his claims against Nurse Practitioner Chukwumerije means that he has failed to comply with prison procedures and the exhaustion requirement found in § 1997e(a).  *See Carbe v. Lappin*, 492 F.3d 325, 238 (5th Cir. 2007).  This violates the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit.  *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient").  Accordingly, Nurse Practitioner Chukwumerije is entitled to summary judgment on this issue and the claims against this defendant will be dismissed.

### B.    Qualified Immunity

The defendants argue further that Burgett fails to show that he was denied adequate medical care or that a constitutional violation occurred.  The defendants argue, therefore, that they are entitled to qualified immunity from liability for Burgett's claims against them in their individual or personal capacity.

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects government employees against civil liability in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow*, 458 U.S. at 818)) (internal quotation marks omitted).  "Even if a defendant's conduct actually violates a

plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)). Thus, the doctrine of qualified immunity "shields from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts engage in a two-prong inquiry. *See Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 815 (2009). The first prong of the analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time. *See id.* at 815-16; *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citation omitted). The second prong of the analysis asks whether qualified immunity is appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). A reviewing court may consider these prongs in any sequence. *See Pearson*, 129 S. Ct. at 818.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the

burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law.  *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.  *See Michalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof," but must offer more than "mere allegations") (quotation omitted).  In this case, the Court finds it appropriate to examine initially whether the plaintiff establishes a constitutional violation of the Eighth Amendment to the United States Constitution, which prohibits deliberate indifference to serious medical needs.

### 1.      Eighth Amendment — Medical Care

As outlined above, Burgett complains that Dr. Fontenot failed to provide him with morphine from August 3, 2009, through September 17, 2009, and again from December 13, 2009, through January 8, 2010.  Burgett also complains that, in March of 2010, officials at the Luther Unit refused to renew his prescription for morphine.  Burgett contends, therefore, that he was denied adequate medical care in violation of the Eighth Amendment.

"Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v.*

*Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The defendants argue that Burgett does not demonstrate a constitutional violation because the record does not show that they acted with the requisite deliberate indifference. The Eighth Amendment deliberate-indifference standard has both an objective and subjective component.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To establish deliberate indifference under this standard, the prisoner must show that (1) the defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).  The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical

11

treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

The defendants have provided an affidavit from Dr. Steven Bowers, who is employed by the University of Texas Medical Branch ("UTMB") and serves as the Legal Coordinator and Director of the Continuing Medical Education Committee for the UTMB Correctional Managed Care program. [Doc. # 29, Exhibit A]. Dr. Bowers notes that Burgett was diagnosed with "invasive carcinoma" (*i.e.*, cancer) of the anus and rectum on July 23, 2008. Burgett was treated with radiation therapy beginning on September 3, 2008, followed by "excisional surgery" and chemotherapy. At this time, Burgett was given Tylenol #3, which is a narcotic medication, for pain. A subsequent PET scan for "metastases" was negative for "except for the primary lesion and small local satellite lesions in the anorectal area." Burgett's continuing care has been coordinated locally on a consulting basis with the Sam Houston Cancer Center ("SHCC") in Huntsville.

Dr. Bowers reports that, on October 24, 2008, an oncology consultant (Dr. Mitter) noted a "rectal mass" and the need for additional chemotherapy along with radiation and then follow-up chemotherapy. Dr. Mitter prescribed Tylenol #3 for pain, but not morphine or "MS Contin" as it is known. On October 28, 2008, Burgett refused all chemotherapy. After the risks were explained, Burgett again refused chemotherapy. On November 7, 2008,

12

doctors at the SHCC prescribed Darvocet for pain.  On November 11, 2008, Burgett was examined by another oncologist (Dr. Ellent) who, after observing no complaints of pain, discharged Burgett, advising him that he could return to the SHCC "if and when he wants chemotherapy."

Morphine, which is a controlled substance, is not casually dispensed under normal circumstances.  The record shows that, for purposes of its distribution to prison inmates in TDCJ, morphine and other narcotic pain medications are "non-formulary prescriptions."[1] On November 14, 2008, a physician with UTMB (Dr. Julye) prescribed MS Contin or morphine for Burgett with up to 5 refills.  Dr. Julye noted on the "non-formulary prescription request that it was recommended by an [unidentified] oncology consultant" at SHCC. According to Dr. Bowers, the prescription for MS Contin was refilled many times thereafter by various physicians at the Luther Unit, including the primary defendant, Dr. Fontenot.  Dr. Bowers explains that "each prescription is generally for 30 days and so each refill is likewise

---

[1]  The precise definition of formulary and non-formulary prescriptions is not given.  A "formulary" is defined as "[a] continually revised compilation of approved pharmaceuticals, plus important ancillary information, which reflects the current clinical judgment of the institution's medical staff." STEDMAN'S MEDICAL DICTIONARY 763 (28th ed. 2006).  A "formulary" is also known as "[a] list of preferred drugs for treating specific conditions" or "[a] list of drugs that are routinely kept on hand in the pharmacy department of a particular hospital or other health care facility."  J.E. SCHMIDT, 2 ATTORNEY'S DICTIONARY OF MEDICINE at F-156.  Dr. Bowers explains in his affidavit that "orders and/or plans from outside consultants, including [UTMB] Hospital Galveston, are only recommendations and can be adhered to exactly, partially adhered to or not adhered to at all by the unit medical staff, depending on the conditions, situations, and availability of such [recommended treatment] at the unit of assignment."  [Doc. # 29, Exhibit A, at 4].  Thus, in this context, a prescription for "formulary" medication appears to refer to drug that has been approved by health care providers at a particular TDCJ facility, whereas a "non-formulary" prescription references a drug that has not been so approved for routine distribution by a unit-level pharmacy.

for 30 days." Dr. Bowers notes that, because MS Contin is a "highly regulated narcotic medication, it requires a special request from the pharmacy and has to be dispensed at the pill window," and it is not allowed to be "kept on person in the cell by the patient."

Dr. Bowers reports that, although health care providers at the Luther Unit have continued to provide him with morphine or MS Contin, Burgett has elected to refuse further treatment for his cancer. Dr. Bowers notes that, on March 4, 2009, Burgett was examined by a consulting oncologist at the SHCC. A repeat PET scan showed a decrease in the size of his tumor and no metastases as before. Burgett was later seen at the UTMB Hospital in Galveston, where a "stent" was inserted in his carotid artery on April 30, 2009. Thereafter, Burgett refused offers of treatment and chemotherapy for his cancer on May 14, 2009, June 25, 2009, and June 30, 2009.

According to Dr. Bowers, Burgett was evaluated at the Luther Unit on August 20, 2009, by Dr. Fontenot, who noted that Burgett continues to refuse cancer treatment and any follow-up visits to the UTMB Oncology Department. Dr. Fontenot determined that Burgett was in "no acute distress and ambulatory." Dr. Fontenot advised Burgett that he would be required to return for an examination at the UTMB Oncology Department before any additional treatment, such as MS Contin, could be given. Burgett refused to attend his appointment at the UTMB Oncology Department on September 9, 2009. On September 16, 2009, Dr. Fontenot requested a referral to the "University Cancer Center" for pain management and again prescribed MS Contin. Dr. Fontenot prescribed MS Contin for Burgett again on October 8, 2009. Thereafter, Burgett repeatedly refused to attend oncology

14

appointments on October 22, 2009, November 1, 2009, and March 15, 2010.

The medical records show that, since September of 2009, doctors have continued to renew prescriptions for MS Contin for Burgett in spite of his continued refusal to accept treatment or to see an oncologist about his condition.  Dr. Bobby Vincent, who is a district director for UTMB Correctional Managed Care, reviewed Burgett's records on March 18, 2010, has noted that a medical decision was made to not renew the prescription without a "current evaluation" by an oncologist.  Noting that Burgett had not seen an oncologist since March of 2009, and that he had refused recommended treatment from the oncology department since that time, Dr. Bowers maintains that the decision not to renew the prescription was reasonable under the circumstances and "within the scope of standard medical practice."  Dr. Bowers explains that, while unit health care personnel have continued to prescribe "strong narcotic pain medication," Burgett has been "unwilling to continue any formal oncological evaluation for a cancer that appears to be responding [to the previous regimen of chemotherapy] and has the potential for a cure."  He adds that, "[b]y denying him the narcotic, the attempt to get him to go for further evaluation while incarcerated, might be life saving to him."  In addition, Dr. Bowers explains that "the Texas State Medical Board Examiners is opposed to continually dispensing controlled substances such as MS Contin indefinitely without adequate medical support or when a patient is in a terminal and painful state."  Dr. Bowers observes that the defendants,  Dr. Fontenot and Nurse Practitioner Chukwumerije, have seen Burgett "multiple times and dealt with his requests in person or via verbal orders in the face of a difficult situation of a patient refusing care but demanding

a highly controlled narcotic medication without appropriate ongoing evaluation by the subspecialists."

Dr. Bowers's affidavit, which is supported by medical records in this instance, demonstrates that Burgett has received extensive medical care while in prison. Burgett does not dispute any of the facts outlined by Dr. Bowers or the medical records, which show that Burgett's prescription for morphine was not renewed for medical reasons because of Burgett's refusal to follow-up periodically with a specialist in the oncology department. To the extent that Burgett takes issue with this medical decision, he fails to demonstrate that he was treated with deliberate indifference or that a constitutional violation occurred. In that respect, the Supreme Court has recognized that a "medical decision" concerning whether to order a particular form of treatment "does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

To the extent that Burgett disagrees with the decision to require an evaluation by a specialist before renewing his prescription for morphine, this type of allegation also fails to demonstrate deliberate indifference. The Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman*, 198

16

F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).  It is well established that allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference[.]" *Gobert*, 463 F.3d at 347 (citations omitted).  Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim.  *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

The medical records make clear that officials offered to renew Burgett's prescription for morphine more than once, asking only that he agree to an evaluation by a specialist. Viewing all of the evidence in the light most favorable to the plaintiff, as non-movant, Burgett does not show that he was denied care and he does not otherwise demonstrate that the defendants refused care or that they intentionally treated him incorrectly with wanton disregard for a serious medical condition.  *See Domino,* 239 F.3d at 756.  Burgett's allegations concerning the level of care that he received are not sufficient to raise a genuine issue of material fact on whether he was treated with deliberate indifference and they do not articulate a violation of the Eighth Amendment.  Because Burgett fails to establish a constitutional violation in connection with his prescription for morphine, the defendants are entitled to qualified immunity under the first prong of the *Saucier* analysis.  Accordingly, the defendants are entitled to summary judgment on these issues.

### 2.   Objective Reasonableness

For reasons discussed in more detail above, Burgett has not raised a genuine issue of material fact on whether any of the defendants committed a constitutional violation. Because Burgett has failed to establish a constitutional violation, the Court need not proceed to the final step of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). Nevertheless, the defendants argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances.

To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (emphasis added). If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity. *See Malley*, 475 U.S. at 341. Burgett has not overcome the defendants' assertion of qualified immunity in this instance.

According to the medical records and the affidavit from Dr. Bowers, Burgett was told that, in order to renew his prescription for morphine, he needed a current evaluation by an oncologist. Burgett does not dispute that he refused treatment for his cancer and that he repeatedly refused to attend scheduled appointments with specialists in oncology. In Dr. Bowers's opinion, the defendants acted reasonably within the scope of standard medical

practice.

Where qualified immunity is asserted, Burgett, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. Burgett has filed a response to the summary judgment motion, but his pleadings do not overcome the defendants' assertion of qualified immunity. As outlined above, there is no evidence that Burgett was denied medication or medical care with deliberate indifference. Rather, the record shows that Burgett repeatedly refused care that was offered. Burgett's allegation that he was denied care is not supported by the record and does not raise a genuine issue of material fact on whether any of the actions taken by any of the defendants were unreasonable under the circumstances. Based on this record, Burgett's unsupported allegations are not sufficient to overcome the defendants' assertion of qualified immunity in this instance. The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

### C.      Request for Injunctive Relief

Shortly before the defendants filed their motion for summary judgment, Burgett submitted a second motion for injunctive relief [Doc. # 25]. In that motion, Burgett advised that he was seen by a pain management specialist at UTMB in Galveston on May 28, 2010. The specialist approved the following prescriptions for pain management: (1) 30 mg of morphine, twice daily; (2) Tylenol #3 tablets, 2 or 3 times daily; and (2) neurontin, 1 tablet,

3 times daily.  Burgett asks the Court for an injunction or court order directing the defendants to dispense the medication as prescribed.

In response to Burgett's motion, the defendants have provided a supplemental affidavit from Dr. Bowers and additional medical records.  [Doc. # 34, Exhibits D & E].  Dr. Bowers acknowledges that, at his appointment on May 28, 2010, a specialist at UTMB Galveston recommended three non-formulary medications for pain.  Since that time, Burgett has received morphine in the form of MS Contin and Tylenol #3, as recommended.  Dr. Bowers concedes, however, that the Luther Unit pharmacy denied the prescription for neurontin and recommended another type of formulary pain medication (tegretol) instead. Dr. Bowers noted that, because Burgett has numerous prescriptions for a variety of medication, unit health care providers were concerned about "polypharmacy," which literally means "many drugs."[2]  This occurs when one patient takes more medications than are actually needed.[3]  Polypharmacy, which is a particular concern for elderly patients like Burgett, can result in drug interactions and adverse drug reactions or side effects.  Dr. Bowers reports nevertheless that, after Burgett complained of pain on July 9, 2010, his prescription for tegretol was discontinued and he began receiving neurontin as recommended.

---

[2]     The medical records reflect that, as of July 9, 2010, Burgett had numerous prescriptions for the following medications: (1) albuterol; (2) amlodipine; (3) Tylenol #3 (acetaminophen with codeine); (4) carbamazepine; (5) enalapril; (6) furosemide; (7) glyburide; (8) lactulose; (9) metoprolol; (10) morphine; (11) nitroglycerin; (12) plavix; (13) potassium; (14) provastatin; (15) simethicone; and (16) tolnaftate.  [Doc. # 34, Exhibit E].

[3]     Polypharmacy is "[t]he over-prescribing of medicinal substances, *i.e.*, the prescribing of two, three, or more medicines when one would generally be regarded as enough."  J.E. SCHMIDT, 4 ATTORNEY'S DICTIONARY OF MEDICINE at P-346.

Thus, Burgett is currently receiving all of the medication that was prescribed for pain management on May 28, 2010.

Burgett does not dispute that he is now receiving all three of the pain medications that were recommended on May 28, 2010. Burgett appears to argue that, by providing him with an alternative form of medication from the one recommended by the specialist in Galveston, health care providers at the Luther Unit failed to afford him adequate care. Dr. Bowers insists, however, that health care providers at the Luther Unit showed attention to Burgett's complaints and acted in good faith. Dr. Bowers states further that, based on his education, training, and experience as a physician both in the community and correctional settings, the care given to Burgett in this instance "was timely, appropriate and very competent."

Based on this record, Burgett does not show that he has been denied adequate medical care with deliberate indifference. Although a decision was made to decline one of the three prescribed pain remedies recommended by the specialist in Galveston, Burgett eventually received the medication that was prescribed. He does not allege facts establishing that an injunction is necessary under these circumstances. In that regard, any speculation that Burgett could be denied medication in the future does not entitle him to injunctive relief. *See City of Lost Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (observing that "past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also Kirby v. Johnson*, 243 Fed. App'x 877, 2007 WL 2228616 (5th Cir. 2007) ("Injunctive relief is inappropriate when sought to prevent

injury that is speculative at best.") (citing *Carter v. Orleans Parish Public Schools*, 725 F.2d 261, 263 (5th Cir. 1984)); *Taylor v. Milton*, 124 Fed. App'x 248, 2005 WL 352637 (5th Cir. 2005) (noting that, where a prisoner failed to allege any facts that would render the likelihood of a future injury any more than a remote and speculative possibility, he failed to state a valid Eighth Amendment claim for injunctive relief) (citing *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)).  Because Burgett has received the relief requested in his motion, there is nothing left for the Court to remedy.  Accordingly, his motion for injunctive relief on this issue will be denied.

## IV.   PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Burgett has filed a motion to compel the defendants to provide him with copies of medical records from the Sam Houston State Cancer Center, where Burgett has received radiation treatment for his cancer in the past.  [Doc. # 36].  Because the motion was filed after the defendants moved for summary judgment, the Court construes the motion as one governed by Rule 56(f) of the Federal Rules of Civil Procedure.  Under Rule 56(f)(2), the Court may grant a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken, if the party opposing a motion for summary judgment shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition.

Motions for a continuance under Rule 56(f) are "generally favored, and should be liberally granted."  *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.

1991), *cert. denied*, 502 U.S. 1059 (1992)).  To justify a continuance, however, the Rule 56(f) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact.  *See Stearns Airport Equip.*, 170 F.3d at 534-35 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).  In that regard, the movant "must be able to demonstrate how postponement and additional discovery will allow him to defeat summary judgment; it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'"  *Stearns Airport Equip.*, 170 F.3d at 535 (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)).

Burgett does not meet his burden to show that a continuance is warranted under Rule 56(f) in this instance.  In that respect, his one-page motion simply asks for copies of records from the Sam Houston Cancer Center, where he formerly received treatment, without offering any reason for the request.  Burgett's conclusory motion does not contain specific facts showing that additional discovery is needed in order to demonstrate a genuine issue of material fact.  Because Burgett has not established how the discovery that he seeks will create a genuine issue of material fact, his motion to compel will be denied.

## V.    CONCLUSION AND ORDER

Accordingly, based on this record, the Court **ORDERS** as follows:

1.    The defendants' motion for summary judgment [Doc. # 29] is **GRANTED**.

2.    The plaintiff's second motion for injunctive relief [Doc. # 25] and motion to compel discovery [Doc. # 36] are **DENIED**.

3.      This case is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>October 29</u>, 2010.

_____
Nancy F. Atlas
United States District Judge